UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 10-00230-01 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| JECARLOS MONTRAE CARTER | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Record Document 565) filed by the Petitioner, JeCarlos Montrae Carter ("Carter"). Carter seeks an order from the Court to vacate and correct his sentence. For the reasons set forth below, Carter's Motion is **DENIED**.

## FACTUAL BACKGROUND

Carter was indicted by a grand jury in July 2010, and was charged with one count of conspiracy to distribute powder cocaine in violation of 21 U.S.C. §§ 841(a)(1), (B)(1)(A)(ii), 846 (Count 1); two counts of possession with intent to distribute powder cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii) (Counts 2 and 6); three counts of possession with intent to distribute powder cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts 4, 7, and 10); and three counts of unlawful use of a communication facility in violation of 21 U.S.C. § 843(b) (Counts 5, 8, and 9). He was convicted of all nine counts by jury.

The presentence investigation report (PSR) determined Carter faced a statutory mandatory life sentence because the conspiracy involved five or more kilograms of cocaine and he had three prior felony drug convictions. Carter objected to the report and argued that the Government had not proven the quantity of cocaine, but, ultimately, he

1

stipulated to the five kilograms used at sentencing. Carter was sentenced to life imprisonment as to Count 1; 360 months as to Counts 2, 4, 6, 7, and 10; and 96 months as to Counts 5, 8, and 9.

Carter's trial counsel, J. Ransdell Keene, withdrew his representation when Carter filed a notice of appeal. Stephen Shapiro was appointed to represent Carter in his appeal. The Court of Appeals for the Fifth Circuit upheld Carter's conviction but found insufficient evidence "to support the five-kilogram quantity of cocaine alleged in Count 1…" U.S. v. Daniels, 723 F.3d 562, 571 (5th Cir. 2013). Carter's sentence was vacated as to Count 1 and was remanded for resentencing according to § 841 (b)(1)(A)(ii). After a petition for panel rehearing was granted, all sentences for the remaining counts were vacated and the case was remanded for resentencing. See U.S. v. Daniels, 729 F.3d 496 (5th Cir. 2013).

A new PSR was generated that again held Carter responsible for at least five kilograms on belief that the conspiracy involved at least eight kilograms. At his resentencing, Carter stipulated to the distribution of three and one half to five kilograms of cocaine and a four-level enhancement for his leadership role in the offense. Carter was resentenced to a term of imprisonment of 240 months as to Counts 1, 2,4, 6, 7, and 10, and 96 months as to Counts 5, 8, and 9 to run concurrently.

Carter again appealed this sentence and proceeded *pro se*. The Fifth Circuit affirmed his sentence, see U.S. v. Mims, 655 Fed.Appx. 179 (5th Cir. 2016), and the U.S. Supreme Court denied his writ of *certiorari*, see Carter v. U.S., 137 S.Ct. 1237 (Mem) (2017), denying cert. In March 2018, Carter filed the instant § 2255 Motion to Vacate (Record Document 565) alleging ineffective assistance of trial and appellate counsel,

errors by this Court at trial, and jurisdictional violations by the Fifth Circuit. He then filed a supplemental motion in May 2018. See Record Document 579.

## LAW AND ANALYSIS

After a finding of guilt and exhaustion of a defendant's right to appeal, the Court is "entitled to presume that the defendant stands fairly and finally convicted." U.S. v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991), quoting U.S. v. Frady, 456 U.S. 152, 164, 102 S.Ct. 1584, 1592 (1982). However, a defendant can challenge a final conviction under 28 U.S.C. § 2255 on issues of constitutional or jurisdictional magnitude. See Shaid, 937 F.2d at 232. Claims permitted under § 2255 are limited to four categories: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack." 28 U.S.C. § 2255.

In addition to the substantive limitations, § 2255 claims can be procedurally barred if a claim, which may have been raised on direct appeal, is brought before the court for the first time on collateral review. To overcome the procedural hurdle, a defendant must first show cause or some external impediment that prevented him from raising the new claim on direct appeal. See U.S. v. Flores, 981 F.2d 231, 235 (5th Cir. 1993). A defendant must then meet the actual prejudice test by demonstrating "an actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." Shaid, 937 F.2d at 233. Exceptions to the two-pronged analysis exist in cases where "a constitutional violation has probably resulted in the conviction of one who is actually innocent" id. at

232, or where the petitioner raises claims of ineffective assistance of counsel. See U.S. v. Massaro, 538 U.S. 500, 509, 123 S.Ct. 1690, 1696 (2003).

1. Ineffective Assistance of Trial Counsel[1]

To prevail on a claim of ineffective assistance of counsel, the defendant must show that his counsel's performance was deficient which resulted in prejudice to him. See Strickland v. Washington, 466 U.S. 668, 688 104 S.Ct. 2052, 2065. The proper standard for attorney performance is that of "reasonably effective assistance." Id. In scrutinizing attorney performance, the Court may be highly deferential because counsel must be free to make strategic and tactical choices when representing his client. To meet the second prong of Strickland, counsel's deficient performance must result in actual prejudice to the defendant meaning the defendant must show there is a "reasonable probability[2] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 695, 104 S.Ct. at 2068.

Carter alleges his trial counsel, J. Ransdell Keene ("Keene"), was ineffective because he failed to: 1) file a motion to suppress the information gathered from the wiretap; 2) argue the illegality of the wiretap itself; 3) file a motion to suppress the information gathered from the GPS tracker; 4) argue the illegality of the GPS tracker placement; 5) allow Carter to listen to the wiretaps and obtain his own transcript; 6) ask for an interrogatory jury form; and 7) relay a plea offer from the Government during trial.

---

[1] Whether the information presented at trial against Carter was constitutionally acquired is not the focus of the Court's inquiry into the effectiveness of Keene's representation. Carter failed to raise the constitutional issue on direct appeal. It is now procedurally barred from this Court's consideration.

[2] A "reasonable probability" is one enough to undermine the confidence of the outcome. See Strickland, 466 U.S. at 695, 104 S.Ct. at 2068.

For his wiretap argument, Carter believes since he was in Dallas, Texas, and the calls were intercepted in Metairie, Louisiana, this Court had no jurisdiction to order a wiretap on his phone. According to the statute, "intercept" is defined as "the aural or other acquisition of the content of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2410(4). The Court of Appeals for the Fifth Circuit has interpreted interception to include both the place where the phone lines are tapped and where law enforcement hears the communications. See U.S. v. Denman, 100 F.3d 399, 403 (5th Cir. 1996). As result, any court within the location of the tapped phone or a listening post has jurisdiction to order a wiretap. See id. Special Agent Brian Stone ("Agent Stone") with the Federal Bureau of Investigations testified at trial that case agents in Shreveport simultaneously listened to the tapped conversations while agents also listened in Metairie. See Record Document 357 at 104. Because there was a listening post located in this Court's district, any motion to suppress arguing this Court lacked jurisdiction to order the wiretap would have been meritless. Keene's decision to not file such a motion was reasonable trial strategy for which he cannot be faulted.

Carter next argues Keene was ineffective for failing to file a motion to suppress the information collected from the GPS tracker on his vehicle. Carter states that the U.S. Supreme Court case of U.S. v. Jones, 565 U.S. 400, 132 S.Ct. 945 (2012), requires a warrant to place a GPS tracker because it constitutes a search under the Fourth Amendment. Carter contends that because the officers never obtained a warrant to place a tracker on his vehicle, the tracking information should have been suppressed. While Jones is the current state of GPS tracking law, at the time Carter was arrested, U.S. v. Michael, 645 F.2d 252 (5th Cir. 1981), was the controlling precedent. Michael held that

5

reasonable suspicion was sufficient to place a tracker without a warrant. See Michael, 645 F.2d at 258. The Court finds that Keene relied in good faith on the existing law governing GPS tracking, and his decision to not file a motion to suppress what appears to be legally gathered tracking information was reasonable.

Carter's allegations continue by arguing Keene never permitted Carter to listen to the wiretap recording nor did he relay a plea offer to Carter during trial. As for his assertion that Keene failed to relay a plea, Carter's claim is factually wrong. Carter bases his argument on a conversation he had with a co-defendant who informed him there was a plea deal available to all defendants. However, according to the affidavits of both Assistant U.S. Attorneys present at trial, the plea deal described was never available to Carter. See Record Documents 584-2 and 584-3. It is clear Keene cannot have withheld a plea offer if such offer never existed. As for his argument that Keene refused to allow him to listen to the wiretap conversations, Carter does not explain how failure to review the evidence prejudiced his case to the point that the verdict might have been different. Carter believes he was prejudiced because listening to the wiretaps could have convinced him to plead guilty instead of going to trial, but the Court finds no viable proof in Carter's Motion that suggests listening to the recordings would have swayed him to make such a decision.[3]

Carter next claims Keene failed to adequately represent him by neglecting to request an interrogatory jury verdict form which would have required the jury to determine the exact quantity of cocaine for which Carter should be held responsible. However, the Fifth Circuit, in its review of Carter's case, determined that no special jury verdict form

---

[3] The Government raises the point that the conversations recorded in the wiretaps were Carter's own. The Court believes that Carter was already aware of any incriminating information contained in the phone calls.

was required to instruct the jury to find a particular quantity of controlled substances. See U.S. v. Daniels, 723 F.3d 562, 572 (5th Cir. 2013). As result, there was no error or harm caused by Keene when he failed to request such a jury instruction.

Carter then contends Keene provided ineffective assistance because he did not move to dismiss an impartial juror who reported that she had been intimidated by a co-defendant's family member nor did he move for a mistrial. In a hearing, the undersigned thoroughly questioned the juror after she reported the incident and ensured her impartiality. Notably, Carter concedes that after the Court's questioning, Keene orally moved for the juror's dismissal. The Court believes that because the juror's potential partiality was fully examined, Keene did not need to take any further step beyond his oral motion. The Court finds no deficiency in Keene's representation.

Finally, Carter raises the argument that Keene should have moved for the recusal of the undersigned during trial because of comments made by Keene regarding the undersign's "pro-government" stance and prior mentorship of one Assistant U.S. Attorney. The Fifth Circuit has explained that to determine whether a judge's impartiality may be reasonably questioned, one must ask whether a "well-informed, thoughtful, and objective observer would question the court's impartiality." Trust Co. of Louisiana v. N.N.P., 104 F.3d 1478, 1491 (5th Cir. 1997). The Court finds that Carter has not presented any further evidence beyond his bald accusations to support his contention that the undersigned was partial or prejudiced against him during trial.

Because Keene acted in a reasonable, tactical manner in each instance and Carter failed to show how he was prejudiced by Keene's actions, Carter's Motion with regards to the ineffective assistance of counsel claim against Keene is **DENIED**.

2. Ineffective Assistance of Appellate Counsel

Carter also brings a claim of ineffective assistance of counsel against his appellate representation, Stephen Shapiro ("Shapiro"), alleging: 1) Shapiro failed to argue that Alleyne v. U.S., 570 U.S. 99, 133 S.Ct. 2151 (2013)[4] was intervening law which would require a change in sentencing range; 2) Shapiro coerced him to stipulate to the quantity of cocaine and his leadership role in the conspiracy; and 3) a conflict of interest existed between Carter and Shapiro. Because Strickland is also applicable to the evaluation of appellate counsel performance, the Court addresses the sufficiency of Shapiro's representation in each instance.

Carter specifically asserts 1) Shapiro failed to file a letter supplementing his appellate brief explaining the new Alleyne precedent under Federal Rule of Appellate Procedure 28(j); 2) he failed to seek rehearing to argue the Alleyne claim after the Fifth Circuit vacated and remanded for resentencing; and 3) he neglected to argue at resentencing that Alleyne was intervening law. However, as the Government points out, the Fifth Circuit addressed any impact Alleyne might have on Carter's resentencing in its ruling on direct appeal. The Fifth Circuit noted that the jury was asked to find if Carter was guilty of conspiracy involving five kilograms of cocaine. Remanding so that Carter could be resentenced to a charge of 500 grams or more was not against Alleyne because the previous five-kilogram finding by the jury clearly encompassed the minimum 500 grams. U.S. v. Daniels, 723 F.3d 562, 574 (5th Cir. 2013). Shapiro reasonably relied on the Fifth Circuit's decision incorporating Alleyne in choosing not to rehash the issue in further briefing, rehearing, or resentencing. Looking to the second prong of Strickland, Carter

---

[4] Alleyne dictates that "any fact that increases the mandatory minimum is an "element" that must be submitted to the jury." Alleyne, 570 U.S. 99, 103, 133 S. Ct. 2151, 2155.

8

cannot prove that Shapiro's decision prejudiced him because the Fifth Circuit already considered the intervening law and found it satisfied.

Carter next argues Shapiro coerced him to stipulate to the quantity of drugs involved and his leadership role in the conspiracy. Again, the Fifth Circuit addressed Carter's claim on appeal after his resentencing and found that the record reflected a knowing and voluntary stipulation by Carter. See U.S. v. Mims, 655 Fed.Appx. 179, 180 (5th Cir. 2016). After reviewing this Court's acceptance of the stipulation, the Fifth Circuit determined Carter understood the stipulation, the precise sentence he would receive, and the rights he waived by agreeing. Based on the record, the Court agrees that no coercion occurred on behalf of Shapiro and Carter suffered no prejudice by accepting the stipulation.

Lastly, Carter contends that a conflict of interest existed between him and Shapiro after Shapiro moved to withdraw his representation. The Sixth Amendment provides a petitioner the right to effective assistance of conflict-free counsel. See Cuyler v. Sullivan, 466 U.S. 335, 100 S.Ct. 1708 (1980). Cuyler dictates that a criminal defendant, who did not object to the potential conflict at trial, may proceed collaterally if he can show that an "actual conflict"[5] adversely affected counsel's performance. Id. at 348, 100 S.Ct. at 1718. This Court previously denied a Motion for Hearing to determine counsel (Record Document 462) filed by Shapiro, finding that the "disagreement between [Carter] and [Shapiro] is not great enough to jeopardize the legal process." Record Document 465. This forecloses Carter's claim that an actual conflict existed. Additionally, the Court finds

---

[5] An actual conflict exists when counsel is "compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." Perillo v. Johnson, 205 F.3d 775, 781 (5th Cir. 2000).

9

no factual support for the argument that the alleged conflict caused inadequate performance. Shapiro maintained his representation of Carter and took numerous, reasonable steps to continue to protect Carter's rights and provide effective counseling.

The Court finds Carter has failed to prove Shapiro's representation fell below a reasonable level, nor did he provide evidence that he was prejudiced in any way by Shapiro's actions.

3. Remaining Claims against the Courts

Carter's remaining claims alleging improper actions by this Court with regards to the admissibility of wiretap information, the presence of the potentially "impartial juror," and the denial of Shapiro's motion to withdraw in addition to Carter's attacks on the U.S. Sentencing Guideline calculations of his sentence could have been brought on direct appeal but were not. To review these claims now on collateral review, Carter must prove actual prejudice that prevented him from raising the claims on direct review. The Court finds Carter does not meet this burden and thus the claims are procedurally barred under Massaro.

Similarly, Carter attempts to rehash his arguments about how the District Court violated his Due Process rights at resentencing. However, these allegations were already addressed by the Fifth Circuit on appeal after Carter's resentencing. They cannot be reconsidered by this Court at this stage. Likewise, Carter's claim that the Fifth Circuit had no jurisdiction to remand for resentencing is not reviewable by this Court.

All additional claims by Carter such as prosecutorial vindictiveness are not supported by evidence or argument in Carter's Motion to Vacate.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Carter's Motion to Vacate pursuant to 28 § 2255 is **DENIED**.

Pursuant to Rule 11(a) of the Rules Governing 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a) Rule Governing Section 2255 Proceedings for the United States District Courts (emphasis added). Unless a Circuit Judge or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.

In this instance, a certificate of appealability is **DENIED** because the applicant has failed to demonstrate a substantial showing of the denial of a constitutional right.

A memorandum order consistent with the above memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 20th day of April 2021.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT